[No. 21243-9-II. Division Two. March 27, 1998.]

DONALD C. MILLIGAN, *Appellant*, v. RICHARD THOMPSON, *as Secretary of the Department of Social and Health Services*, ET AL., *Respondents*.

*William M. Hanbey* of *Ditlevson, Rodgers & Hanbey*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Peter W. Berney, Assistant*, for respondents.

SEINFELD, J. — The trial court dismissed Donald Milligan's employment discrimination action on summary judgment, concluding that it was barred by the statute of limitations. Milligan appeals, arguing that his cause of action did not accrue until he had exhausted his administrative remedies. In the alternative, he claims that the trial court erred in failing to apply the doctrine of "continuing violation." We disagree with both contentions and affirm the

dismissal of all allegations except those related to independently actionable violations occurring after Milligan's demotion and within the relevant statutory period.

## FACTS

The Department of Social and Health Services (DSHS) first employed Milligan, who is of Native American ancestry, in 1968. In 1972, DSHS established the "Indian Desk," later known as the Office of Indian Affairs, and appointed Milligan as Supervisor. His duties included implementing DSHS's Indian Affairs policy and the Indian Child Welfare Act, and advocating for DSHS's Indian employees and clients.

In 1989, Respondent Gregg Dohrn became Milligan's immediate supervisor and apparently demanded greater accountability than previous supervisors had required. Friction soon developed between the two and in September 1990, Dohrn filed four personnel conduct reports (PCRs) against Milligan.

Following the issuance of the PCRs, DSHS placed Milligan on home assignment with full pay pending a decision on the appropriate disciplinary action. On February 1, 1991, Dohrn's immediate supervisor issued a letter, which stated that effective February 18, 1991, DSHS was permanently demoting Milligan from the position of Social and Health Program Coordinator 3 (SHPC3) to Social Worker 4 (SW4) because of his neglect of duty, inefficiency, insubordination, and gross misconduct.

Milligan filed complaints with the U.S. Equal Employment Opportunity Commission (EEOC) and the Office of Civil Rights (OCR). The EEOC closed its file on July 11, 1991, after giving Milligan a Notice of Right to Sue letter. The OCR determined that it did not have jurisdiction under Title VI.

Milligan also appealed his demotion to the Personnel Appeals Board (PAB). On February 28, 1992, it found sufficient evidence to prove neglect of duty, inefficiency, and

insubordination, but insufficient evidence to prove gross misconduct. As a result, it determined that a nine-month demotion to the SW4 classification was sufficient discipline, and it ordered Milligan reinstated in his former SHPC3 classification effective November 18, 1991.

During the pendency of Milligan's PAB appeal, the Personnel Department abolished all positions within the SHPC3 classification and allocated them to other classes. Effective June 12, 1992, Milligan's former position was reclassified as a Social and Health Program Manager 3 (SHPM3). Thus, to comply with the PAB ruling, Milligan was reinstated in his previous SHPC3 classification from November 18, 1991, until June 12, 1992, and then reassigned to the SHPM3 classification.

Meanwhile, in October 1991, Milligan filed a complaint in superior court against DSHS, certain DSHS employees, and the State of Washington (Respondents). He alleged violations of Washington's Law Against Discrimination, RCW 49.60; of 42 U.S.C. §§ 1981, 1983, and 1985(3); and of 42 U.S.C. §§ 2000e-2 and 2000e-5, referred to as Title VII. He also alleged that Respondents had committed the common-law torts of outrage, defamation, and infliction of emotional distress. Milligan states that he filed a claim with the State pursuant to RCW 4.92 on the same day that he filed his complaint.[1]

In their answer filed in August 1994, Respondents raised as affirmative defenses Milligan's failure to comply with the claim-filing statute and his failure to exhaust administrative remedies. Milligan responded by moving for voluntary dismissal of his lawsuit and on September 29, 1994, filed another claim with the State. Sixty days thereafter, on November 29, 1994, he refiled his complaint. The Respondents moved for summary judgment, claiming the action was barred by the statute of limitations. In response, Milligan filed a declaration alleging additional discriminatory

---

[1]Milligan's complaint was premature as RCW 4.92.110 requires that 60 days must elapse after a claim is filed with the risk management office before an action may be commenced.

acts by the Respondents, some occurring after February 1992. The trial court granted summary judgment, finding that all the alleged discriminatory acts were related to the demotion and all were barred by the statute of limitations. Milligan appeals.

## DISCUSSION

### I. The Applicable Statute of Limitations Periods

Milligan's complaint alleged the following statutory violations and tort claims:

I. RCW 49.60.180, employment discrimination;

II. RCW 49.60.210, retaliation;

III. 42 U.S.C. § 1981, denial of equal rights;

IV. 42 U.S.C. § 1983, deprivation of civil rights;

V. 42 U.S.C. § 1985(3), conspiracy to interfere with civil rights;

VI. 42 U.S.C. § 2000e-2, Title VII, employment discrimination;

VII. 42 U.S.C. § 2000e-5, Title VII, retaliation;[2]

VIII. Negligent, reckless, and intentional infliction of emotional distress; outrage

IX. Defamation

■■ The statute of limitations for actions arising under Washington's Law Against Discrimination, allegations I and II, is three years. RCW 4.16.080(2); *Martinez v. City of Tacoma*, 81 Wn. App. 228, 231, 914 P.2d 86, *review denied*, 130 Wn.2d 1010 (1996). Causes of action arising under 42 U.S.C. §§ 1981, 1983 and 1985(3), allegations III, IV, and V, borrow their limitations period from the forum state's lim-

---

[2]Milligan incorrectly cited section 2000e-5 as the federal statute prohibiting retaliation against persons opposing an unfair employment practice; the correct citationis section 2000e-3.

itations period for personal injury cases. *Robinson v. City of Seattle*, 119 Wn.2d 34, 85, 830 P.2d 318 (1992); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987); *Garland v. Shapiro*, 579 F. Supp. 858, 859 (E.D. Mich. 1984). In Washington, the statute of limitations for personal injury actions is three years. RCW 4.16.080(2).

Timely filing of allegations VI and VII, which arise under Title VII, requires satisfaction of two statutory prerequisites. First, one generally must file a charge with the EEOC within 180 days of the alleged discriminatory employment practice. But a party who initially instituted proceedings with a state agency has 300 days after the alleged discriminatory practice, or "60 days after receipt by the plaintiff of notice of termination of the state proceedings, whichever is earlier" to file. *Phillips v. General Dynamics Corp.*, 811 F. Supp. 788, 794 (N.D. N.Y. 1993); 42 U.S.C. § 2000e-5(e)(1). Second, one must bring a civil action within 90 days of the issuance of the right-to-sue letter. *Phillips*, 811 F. Supp. at 794; *see also Kirk v. Rockwell Int'l Corp.*, 578 F.2d 814, 817 (9th Cir. 1978) (Title VII's legislative history shows congressional intent that these filing requirements serve as a statute of limitations).

■ The torts of negligent or intentional infliction of emotional distress and outrage have three-year limitation periods. RCW 4.16.080(2). Milligan's defamation cause of action has a two-year limitation period. RCW 4.16.100(1). Generally, a tort or personal injury action accrues at the time the tortious act or omission occurs. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4TH 955 (1985).

■ Here, Milligan does not dispute that he was aware of the alleged discriminatory demotion no later than February 1, 1991, when the demotion letter was issued.[3] When he voluntarily dismissed his original action, the statute of lim-

---

[3]Milligan has not assigned error to the trial court's finding that the demotion letter "alerted plaintiff of his need to assert his rights."

itations continued to run until he filed the tort claim with the State on September 29, 1994.[4] *Steinberg v. Seattle-First Nat'l Bank*, 66 Wn. App. 402, 406, 832 P.2d 124 (1992); *Logan v. North-west Ins. Co.*, 45 Wn. App. 95, 99, 724 P.2d 1059 (1986). This was more than three years after the demotion letter that alerted him to the alleged discriminatory practice and more than three years after the issuance of EEOC's right-to-sue letter. Thus, all Milligan's claims related to the demotion and to Title VII are time barred.

## II. Claims Related to Post-Demotion Violations

Milligan contends that some of his claims related to events occurring after his demotion are within the limitations period. He argues that the trial court did not consider his declaration in the light most favorable to him as the nonmoving party and that his declaration contained uncontroverted allegations of discriminatory conduct occurring within the statutory period.[5]

█ Appellate courts review an order of summary judgment by engaging in the same inquiry as the trial court. *Failor's Pharmacy v. Department of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party, and we review questions of law de novo. *Failor's*, 125 Wn.2d at 493.

Milligan states in his declaration that

> [d]uring the time I was assigned to the Tacoma office, I sought appointment to two DSHS positions for which I was qualified:

---

[4]Under RCW 4.92.110, the applicable period of limitations within which an action must be commenced is tolled for 60 days after a tort claim is filed with the Office of Risk Management.

[5]The trial court's order granting summary judgment specifies the declarations that the trial court considered. The order does not mention Milligan's declaration.

A field staff supervisor for the DSHS Office of Indian Affairs; and the Indian Child Welfare Area Manager for Region IV of DSHS. . . . I was more than qualified for both positions. I was not selected for either position. (I learned I was not considered for the Regional Position because the administrator did not want the "Milligan Problem.").

He also alleges that when it came time to reinstate him *after* the PAB decision,

the agency refused to put me back in the position I had formerly filled . . . .

Instead, despite my identification of six or eight available positions which involved the work I had been performing for the previous twenty years, the agency refused to reinstate me to any of those jobs. The agency refused to put me back in the Office of Indian Affairs.

According to Milligan, in September 1992, DSHS reduced his pay and told him that his request for a review of his position allocation was too late. Milligan alleges that in March 1994, he was denied work in the area of his expertise in retaliation for his filing of a lawsuit to protect his civil rights.

 We see no reason to bar recovery for conduct occurring after the demotion and within the applicable statutory time period.[6] In particular, we find the Respondents' argument related to the "continuing violation" doctrine unpersuasive.

Both Milligan and the Respondents rely on the "continuing violation" doctrine to expand or reduce the statutory period respectively. Milligan suggests that the Respondents subjected him to a series of related discriminatory actions that began in September 1990, and have continued to the present. He argues that each new violation "rewinds the clock for each discriminatory episode along the way." *See*

---

[6]The statute of limitations on Milligan's claims for damages arising out of the tortious conduct of the State or its employees acting in an official capacity was tolled during the time the State was reviewing Milligan's claim filed on September 29, 1994. RCW 4.92.110.

*Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183 (1st Cir. 1989). The Respondents argue that the "continuing violation" doctrine bars Milligan's actions for violations that occurred within the statutory period because those actions are connected to violations that occurred outside the relevant statutory period.

The doctrine of continuing violations applies in two types of employment situations: serial violations and systemic violations. *Sabree v. United Bd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 400 (1st Cir. 1990). Milligan alleges serial violations, violations "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong . . . ." *Id.* at 400. If at least one of the discriminatory acts in the series falls within the limitations period, and there is a substantial relationship between the timely and untimely claims, the continuing violation doctrine allows the plaintiff to reach back and recover for the earlier acts outside the limitation period. *Id.*

To determine whether a substantial relationship exists between the timely and untimely conduct, federal courts consider (1) whether the alleged acts involve the same type of discrimination tending to connect them in a continuing violation; (2) whether the alleged acts are recurring; and, (3) most importantly, whether the untimely act has the degree of permanence that should have triggered the employee's awareness of and duty to assert his or her rights. *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983).

Milligan's Title VII claims are time barred, as we discussed above, for failure to comply with filing requirements. Nor can he "reach back and recover" for his non-Title VII claims that occurred before September 29, 1991 because, as the trial court correctly concluded, the demotion was the type of permanent decision that should have alerted Milligan to assert his rights. *Sabree*, 921 F.2d at 402; *Berry*, 715 F.2d at 981.

 But, on the other hand, the Respondents cannot use the continuing violation doctrine to avoid liability for their actions within the statutory period either. "[N]o continuing violation theory is really needed to support a violation [that occurs within the limitations period]." *Sabree*, 921 F.2d at 400. Neither statute nor logic supports Respondents' argument that timely discriminatory actions are not actionable because earlier discriminatory acts are time barred.

### III. Exhaustion of Administrative Remedies

Milligan claims that all of his claims are timely because the statute of limitations did not begin to run until the PAB reached its decision on February 28, 1992. He argues that the PAB had primary jurisdiction over his demotion and that, under the doctrine of exhaustion of remedies, his demotion could not be judicially appealed until his rights of administrative appeal were exhausted. The Respondents contend that employees need not exhaust administrative remedies when bringing an action under Washington's Law Against Discrimination, Title VII, or 42 U.S.C. §§ 1981, 1983, or 1985(3). Thus, they contend, the statute of limitations is not tolled during the period of time such remedies are sought.

 Generally, a state civil service employee subject to an adverse employment action must present his or her claim to the PAB for resolution before bringing an action to court. RCW 41.06.170(2); *Kreager v. Washington State Univ.*, 76 Wn. App. 661, 664, 886 P.2d 1136 (1994); *Kringel v. Department of Soc. & Health Servs.*, 47 Wn. App. 51, 53, 733 P.2d 592 (1987). Exhaustion is required when: (1) a claim is cognizable in the first instance by an agency alone; (2) the agency has clearly established mechanisms for the resolution of complaints by aggrieved parties; and (3) the administrative remedies can provide the relief sought. *South Hollywood Hills Citizens Ass'n v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984). The exhaustion doctrine

furthers the policy of giving deference to an administrative body possessing expertise in areas outside the conventional experience of judges. *Id.* at 73.

But Congress and the Washington Legislature intended that statutory remedies protecting civil rights and preventing discrimination be independent of state administrative remedies and collective bargaining rights. *See Patsy v. Board of Regents*, 457 U.S. 496, 502-07, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982); *Morales v. Westinghouse Hanford Co.*, 73 Wn. App. 367, 371, 869 P.2d 120 (1994). Thus, Milligan was not required to exhaust his administrative remedies before bringing a cause of action under Washington's Law Against Discrimination, *Bruce v. Northwest Metal Prods. Co.*, 79 Wn. App. 505, 513, 903 P.2d 506 (1995), *review denied*, 129 Wn.2d 1014 (1996); *Morales*, 73 Wn. App. at 371; or under any of the federal civil rights laws, *Patsy*, 457 U.S. 502-07; *Johnson v. Greater S.E. Community Hosp. Corp.*, 951 F.2d 1268, 1276 (D.C. Cir. 1991); *Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 425 (7th Cir. 1986).

Nor was Milligan required to exhaust his administrative remedies before bringing his tort actions because there is no showing that those claims were initially cognizable by the PAB alone, were within its special expertise, or that the PAB could provide the relief he sought. *See South Hollywood Hills*, 101 Wn.2d at 73; *see also* WAC 358-30-050 and WAC 358-30-180.[7] Because Milligan did not need to exhaust administrative remedies, the statute of limitations was not tolled during the time of his PAB appeal. Consequently, the trial court properly dismissed his predemotion claims as time barred.

---

[7]WAC 358-30-050 provides: "(3) The personnel appeals board may affirm, reverse or modify the action of an agency or the recommended decision of a hearings examiner or remand the matter for further proceedings before the hearings examiner."

WAC 358-30-180 provides: "Any employee, when fully reinstated after appeal, shall be guaranteed all employee rights and benefits, including back pay, sick leave, vacation accrual, retirement, and OASDI credits as provided for in RCW 41.06.220."

We affirm the dismissal of all claims that accrued on or before February 1, 1991, and all claims arising under Title VII. We reverse and remand for further proceedings any independently actionable claims not arising under Title VII that accrued after September 29, 1991, that were timely filed according to the relevant statutory period.

MORGAN and ARMSTRONG, JJ., concur.