[No. 74759-8. En Banc.]
Argued September 30, 2004. Decided December 23, 2004.

ROSE ANTONIUS, *Respondent*, v. KING COUNTY, *Petitioner*.

Norm Maleng, Prosecuting Attorney, and Diane H. Taylor and John R. Zeldenrust, Deputies, for petitioner.

Carol L. Hepburn (of Campiche, Hepburn, McCarty & Bianco, P.L.L.C.) and Philip A. Talmadge and Candiss A. Watson (of Talmadge Law Group, P.L.L.C.), for respondent.

Andrea Brenneke, Emily Lieberman, and Michael C. Subit on behalf of Washington Employment Lawyers Association and Northwest Women's Law Center, amici curiae.

Bryan P. Harnetiaux and Debra L.W. Stephens on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 MADSEN, J. — Petitioner King County (County) claims that the Court of Appeals erred in applying the analysis in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) to determine whether under state law an employer may be liable in a sex discrimination action based on a hostile work environment for acts occurring more than three years before suit was filed. In Morgan, the United States Supreme Court treated individual discriminatory acts as constituting a unitary, indivisible hostile work environment claim. This view is in contrast to previous case law from the Court of Appeals treating the discriminatory acts as a continuing violation

giving rise to an equitable exception to the statute of limitations. We believe that *Morgan*'s analysis for determining liability under Washington's Law Against Discrimination for hostile work environment claims more fully advances the legislature's intent to end discrimination. Accordingly, we affirm the Court of Appeals' reversal of partial summary judgment and remand this case for further proceedings consistent with *Morgan.*

## FACTS

¶2 Respondent Rose Antonius began working for the County's Department of Adult and Juvenile Detention as a bookkeeper in 1983. In 1985 she was promoted to a position as a corrections officer and worked at the Seattle jail, where she supervised male inmates. She alleges that, until she was transferred to the all-female Alder Street corrections facility in February 1996, she was frequently subjected to sexually derogatory comments and name-calling by inmates, co-workers and supervisors, and was exposed to sexually explicit inmate conduct. She often encountered pornographic materials, including magazines and videos, in inmate areas, as well as pornographic materials left at correctional officers' workstations. At the Alder Street facility, Antonius did not encounter this discriminatory conduct. In December 1996, she was promoted to sergeant and reassigned to the Seattle jail. In March 1997, she was transferred to the newly opened Regional Justice Center Correctional Facility in Kent. There, she did not encounter inmates' sexually explicit conduct because she supervised other correctional officers. She still saw pornographic materials in inmates' residential areas and at workstations, and was exposed to sexually explicit videos, though not as frequently as at the Seattle jail. She also was subjected to derogatory comments toward herself and other females, although not as often as had occurred at the Seattle jail. She did not complain, believing it would not be productive and that it would subject her to ridicule and possible reprisal. She did not want to be labeled a troublemaker.

Apparently acting on advice from the King County prosecutor, the County provided pornographic materials to inmates and corrections staff through the commissary until 1999 and did not prohibit possession and display of such matter in inmates' cells until 2000.

¶3 In 1997, female corrections officers brought a sex discrimination class action against the County based on a hostile work environment. *Holloway v. King County*, No. 97-2-23951-6SEA (King County Super. Ct. Dec. 16, 2003). Antonius was not part of the class, though her deposition was taken in connection with that suit in 1999. The *Holloway* case was settled by a consent decree in December 1999.

¶4 Antonius filed suit against the County on December 22, 2000, alleging the County violated chapter 49.60 RCW by fostering and maintaining a sex-based hostile work environment. Both Antonius and the County moved for summary judgment, the County on statute of limitations grounds. The County maintained that Antonius's suit was untimely as to events occurring more than three years before suit was filed and that she did not face sex-based discrimination during the limitations period itself. Antonius countered by arguing that the hostile work environment was a continuing violation giving rise to an equitable exception to the statute of limitations and that she encountered discriminatory conduct during the limitations period. The trial court granted partial summary judgment in favor of the County as to acts occurring more than three years before Antonius brought suit. The court determined that as to one form of continuing violation, a systemic violation, Antonius failed to support her claim with sufficient facts. As to a second form of continuing violation, a serial violation, the court reasoned that the hiatus in events occurring while Antonius was assigned to the all-female Alder Street facility precluded application of the continuing violation exception to the statute of limitations. The trial court certified the statute of limitations issue under RAP 2.3(b)(4).

¶5 On discretionary review the Court of Appeals applied the standard in *Morgan* to determine if Antonius's hostile work environment was timely as to all alleged acts and reversed the grant of partial summary judgment. *Antonius v. King County*, noted at 118 Wn. App. 1011 (2003). The County petitioned for discretionary review by this court.

## ANALYSIS

¶6 Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, prohibits employment discrimination based on sex. RCW 49.60.010, .030, .180. RCW 49.60.180(3) makes it an unfair practice for an employer "[t]o discriminate against any person in compensation or in other terms or conditions of employment because of . . . sex." RCW 49.60.030(2) authorizes a person discriminated against in violation of WLAD to bring a civil action. The statute provides for the recovery of actual damages, as well as for equitable remedies. *Martini v. Boeing Co.*, 137 Wn.2d 357, 367-68, 374-75, 971 P.2d 45 (1999).

■ ■ ¶7 Two types of sex discrimination claims are recognized—the quid pro quo sexual harassment claim, where the employer requires sexual consideration from the employee for job benefits, and the hostile work environment claim. The four elements of a prima facie hostile work environment claim are (1) the harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer. *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985). The third element requires that the harassment be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment[,] . . . to be determined with regard to the totality of the circumstances." *Glasgow*, 103 Wn.2d at 406-07.

■ ¶8 WLAD does not contain its own limitations period. Discrimination claims must be brought within three years under the general three year statute of limitations for

personal injury actions. RCW 4.16.080(2). Prior to the decision in *Morgan,* the Court of Appeals employed the "continuing violation doctrine" analysis also used by some federal circuits to determine whether conduct occurring more than three years before suit was filed could result in employer liability in a discrimination action under chapter 49.60 RCW. The continuing violation doctrine acted as an equitable exception to the statute of limitations for such suits, allowing a plaintiff to recover damages for otherwise time-barred acts. *Washington v. Boeing Co.,* 105 Wn. App. 1, 8, 19 P.3d 1041 (2000). The doctrine is explained in *Provencher v. CVS Pharmacy,* 145 F.3d 5 (1st Cir. 1998), *overruled in part by Morgan; Crowley v. L.L. Bean, Inc.,* 303 F.3d 387 (1st Cir. 2002).

¶9 Continuing violations could be serial or systemic. *Provencher,* 145 F.3d at 14; *see Washington,* 105 Wn. App. at 8; *Milligan v. Thompson,* 90 Wn. App. 586, 595, 953 P.2d 112 (1998). A systemic violation was rooted in a discriminatory policy or practice, and if the policy or practice continued into the limitations period, a plaintiff could be deemed to have filed a timely complaint. *Provencher,* 145 F.3d at 14. No identifiable act of discrimination was required in the limitations period, and systemic violations were found, for example, with regard to general policies or practices in hiring, promotion, training and compensation. *Provencher,* 145 F.3d at 14.

¶10 Serial continuing violations could be alleged "where a chain of similar discriminatory acts emanating from the same discriminatory animus exist[ed] and where there ha[d] been some violation within the statute of limitations period that anchor[ed] the earlier claims." *Provencher,* 145 F.3d at 14; *see Washington,* 105 Wn. App. at 8; *Milligan,* 90 Wn. App. at 595. The Court of Appeals used three factors to evaluate a serial continuing violation claim, i.e., to determine whether there was the necessary substantial relationship between the timely and untimely conduct:

(1) [W]hether the alleged acts involve[d] the same type of discrimination tending to connect them in a continuing viola-

tion; (2) whether the alleged acts [were] recurring; and, (3) most importantly, whether the untimely act ha[d] the degree of permanence that should have triggered the employee's awareness of and duty to assert his or her rights.

*Milligan*, 90 Wn. App. at 595; *see Washington*, 105 Wn. App. at 8-9. Thus, a serial continuing violation could not prevail if "the plaintiff was or should have been aware that he [or she] was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Provencher*, 145 F.3d at 14. " '[T]he purpose . . . [was] to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred.' " *Provencher*, 145 F.3d at 15 (quoting *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997)). The Seventh Circuit explained: "In its early stages [the acts] may not be diagnosable as sex discrimination . . . or may not cause sufficient distress . . . or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures." *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1166 (7th Cir. 1996), *overruled in part by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

¶11 While the Court of Appeals has used the continuing violation analysis in discrimination cases, we have not previously addressed the matter. Similarly, while some federal circuits applied the doctrine, until recently the United States Supreme Court had not addressed whether the continuing violation doctrine as an equitable exception to the statute of limitations has application in discrimination cases. In *Morgan*, the Court took up the matter in a Title VII case involving a claim of employment discrimination based on race. The Court rejected the continuing violation doctrine.

¶12 In *Morgan*, the plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) claiming, among other things, a racially hostile work environment extending over six years.

The employer argued that it was entitled to summary judgment as to acts occurring before the relevant 300-day limitations period for filing such charges under Title VII. The Court distinguished those cases involving discrete retaliatory or discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, from cases involving claims of a hostile work environment. For discrete acts, the limitations period runs from the act itself, and if the limitations period has run, a discrete act is not actionable even if it relates to acts alleged in timely filed charges. *Morgan*, 536 U.S. at 108-13. However, the Court concluded that hostile work environment claims "are different in kind from discrete acts" and "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. The Court said that the

> "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115 (citations omitted). The Court explained that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).

¶13 Because Title VII's filing provision requires only that the charge be filed within a certain period after the unlawful practice occurred, the Court reasoned, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 117. The Court held that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

¶14 The Court also rejected the rule applied by several of the circuits that a plaintiff could not base suit on acts

occurring outside the statute of limitations' period unless it would have been unreasonable to expect the plaintiff to sue before the statute ran. It did so "precisely because the entire hostile work environment [claim] encompasses a single unlawful employment practice." *Morgan*, 536 U.S. at 117. Thus, it does not matter that a plaintiff knows or should know at the time discriminatory acts occur outside the statute of limitations period that the acts are actionable. *Morgan*, 536 U.S. at 118. The Court said that its holding did not leave employers defenseless because if an employee unduly delayed suit, an employer could assert equitable defenses such as waiver and unreasonable delay, as well as laches if the employer could establish lack of diligence on plaintiff's part and prejudice to the employer as a result of the delay. *Morgan*, 536 U.S. at 121 (O'Connor, J., concurring at 123, 127).

¶15 In applying *Morgan*'s analysis to this case, the Court of Appeals concluded that Antonius presented sufficient evidence of one or more acts of harassment within three years of her suit filed in December of 2000, and therefore the trial court could consider the discriminatory conduct occurring throughout the time the acts constituting a hostile work environment occurred, i.e., acts occurring before December 1997. *Antonius*, noted at 118 Wn. App. 1011, slip op. at 5-6. Accordingly, the Court of Appeals ruled partial summary judgment was improperly granted in favor of the County.

¶16 The County argues that the Court of Appeals erroneously applied *Morgan*. The County contends that *Morgan* is inconsistent with state case law regarding WLAD, specifically *Washington* and *Milligan*.

¶17 *Morgan* departs substantially from the analysis set out in *Washington* and *Milligan*. The United States Supreme Court did not view the issue of acts occurring before the limitations period in a hostile work environment case as a matter of an equitable exception to the statute of limitations. Instead, the Court focused on the nature of the claim itself as a series of acts that collectively constitute one

unlawful employment practice. As a unitary whole, the claim is not untimely if one of the acts occurs during the limitations period because the claim is brought after the practice, as a whole, occurred and within the limitations period.[1] The acts must be, however, "part of the same unlawful employment practice." *Morgan*, 536 U.S. at 122.

¶18 Even though *Morgan* does state an analysis that is quite different from that in *Washington* and *Milligan*, this does not mean the Court of Appeals erred in applying *Morgan*. We have frequently recognized that while federal discrimination cases are not binding, they may be persuasive and their analyses adopted where they further the purposes and mandates of state law. *E.g.*, *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180, 185-86, 23 P.3d 440 (2001) (following the analysis in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) rejecting "pretext-plus" evidentiary standard for a chapter 49.60 RCW employment discrimination claim); *Xieng v. Peoples Nat'l Bank of Wash.*, 120 Wn.2d 512, 518-22, 527-30, 844 P.2d 389 (1993) (discussing cases where this court has followed federal cases interpreting Title VII when addressing issues under RCW 49.60.180, and, in accord with federal case law, rejecting good faith as a complete defense to claim of employment discrimination; in addition, in accord with the rationale of federal cases construing federal attorney fees provision in Title VII for employment discrimination cases, determining that expert witness fees are proper under RCW 49.60.030(2)); *Glasgow*, 103 Wn.2d at 406 n.2 (federal cases interpreting Title VII, while not binding, are instructive).

¶19 Conversely, where Title VII and the state discrimination statutes are different and following federal cases would not further the purposes of state law, the court has declined to find federal authority persuasive. *E.g.*, *Martini*,

---

[1] The Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) explained that the limitation period under Title VII begins when " 'the alleged unlawful employment practice occurred.' " (Emphasis omitted.) (Quoting 42 U.S.C. § 2000e-5 (e)(1).)

137 Wn.2d at 372-75 (declining to follow federal cases on question whether back pay is recoverable in a successful discrimination action without a showing of constructive discharge).

¶20 The County argues, though, that state and federal law are too dissimilar to apply *Morgan*'s analysis under chapter 49.60 RCW. The County points out that the limitation period for RCW 4.16.080(2) is more than three times longer than for Title VII actions, which requires a claim with the EEOC to be filed within 300 days. The County also relies on this court's statement that the remedies under Title VII are "radically different" from remedies under Washington law. *Martini*, 137 Wn.2d at 375. While state law allows actual damages and equitable remedies, Title VII limits back pay awards to two years and imposes caps on compensatory and punitive damages.

¶21 When we described the remedies of Title VII as "radically different" from those in WLAD, we did so in rejecting federal cases that would have provided a more limited remedy under state law than WLAD would allow. *Martini*, 137 Wn.2d at 372-75. Thus, while the County is correct that we said in *Martini* that the two laws provide for "radically different" remedies, we do not see *Martini* as providing a reason to reject *Morgan*. Instead, *Martini* suggests that federal case law that provides the potential for greater recovery is consistent with WLAD's broad scope and the requirement that the act be liberally construed to accomplish its purposes. RCW 49.60.020.

¶22 The County says, however, that damage awards will be unbounded under state law if *Morgan* is adopted. The County is correct that potential liability may be broader under *Morgan* than under the continuing violation exception. However, the possibility that liability may be greater under *Morgan*'s analysis must be weighed against the need to eradicate unlawful sex discrimination and the legislature's command that WLAD be liberally construed. A person has the right to hold employment without discrimination, RCW 49.60.030(1)(a), and the discrimination stat-

utes embody "public policy of 'the highest priority.' " *Xieng*, 120 Wn.2d at 521 (quoting *Allison v. Housing Auth. of City of Seattle*, 118 Wn.2d 79, 86, 821 P.2d 34 (1991)). Discrimination "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. "Sexual harassment as a working condition unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace." *Glasgow*, 103 Wn.2d at 405. We do not agree that the fact that potential liability may be greater under *Morgan* than under previous Court of Appeals' decisions is a basis to reject *Morgan*'s analysis.

¶23 Moreover, the nature of the hostile work environment claim strongly indicates that it should not be parsed into component parts for statute of limitations purposes. *Morgan* underscores the fact that the law does not usually allow a remedy in a hostile work environment case unless there is a pervasive pattern of unlawful treatment over a period of time.

■ ¶24 We conclude that *Morgan* provides a logical analysis for determining liability under WLAD for a hostile work environment claim. The rule of liberal construction and the purposes of the statutes prohibiting sex discrimination in the workplace will be served by adopting *Morgan*'s analysis, permitting suits based on acts that individually may not be actionable but together constitute part of a unified whole comprising a hostile work environment.

¶25 The County argues, however, that adopting *Morgan* will effectively eliminate the limitation period for hostile work environment claims. The County urges this court to hold that hostile work environment claims accrue when the plaintiff has notice of the harm, however slight,' and to adhere to the third prong of the substantial relationship multifactor inquiry for serial continuing violations, which incorporates an inquiry into plaintiff's knowledge of whether the alleged discriminatory acts were actionable prior to the limitations period. The County points out that,

unlike under Title VII, where the limitations period runs from the date the discriminatory practice "occurred," 42 U.S.C. § 2000e-5(e)(1), RCW 4.16.005 states that except as otherwise provided in chapter 4.16 RCW, actions must be commenced "within the periods provided in this chapter after the cause of action has accrued." The County maintains that under the three year statute of limitations of RCW 4.16.080(2) a "discovery rule" of accrual applies.[2]

¶26 Because we reject the continuing violation doctrine, we also reject the "substantial relationship" inquiry that constitutes part of the serial continuing violation inquiry, including its knowledge prong. Thus, we reject the argument that the statute of limitations commences to run when the plaintiff has notice of harm, however slight.

¶27 And although, unless otherwise specified, RCW 4.16.005 bases the running of statutes of limitations on accrual of the cause of action, it does not contain a discovery rule. As noted, chapter 49.60 RCW does not contain a limitations period for civil causes of action and does not define accrual for such causes. There is no statutory discovery rule of accrual that applies to hostile work environment claims.

¶28 In the absence of a specific statute, this court has defined those cases where a discovery rule of accrual will apply. We have not done so in hostile work environment cases.[3] In describing the hostile work environment claim as "collectively . . . one 'unlawful employment practice' " the Court in *Morgan* expressly rejected a discovery rule for triggering the running of the statute of limitations. *Mor-*

---

[2] Under a discovery rule, a cause of action accrues when the plaintiff discovers or reasonably should discover the elements of a cause of action. *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991). "The discovery rule does not require knowledge of the existence of a legal cause of action itself, but merely knowledge of the facts necessary to establish the elements of the claim." *Douchette*, 117 Wn.2d at 814.

[3] In *Douchette*, 117 Wn.2d at 813-15, we declined to apply a discovery rule to an age discrimination claim under chapter 49.60 RCW.

*gan*, 536 U.S. at 117.[4] The Court said that the hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. We agree, and accordingly decline to adopt a discovery rule of accrual for hostile work environment claims.[5]

¶29 In light of the rule of liberal construction and the purposes of the law prohibiting sex discrimination, we affirm the Court of Appeals and adopt *Morgan*'s analysis for liability on a hostile work environment claim.

¶30 The next issue is whether the trial court properly granted summary judgment to the County as to any acts allegedly occurring more than three years before suit was filed. The trial court reasoned that Antonius had failed to show sufficient facts to show a systemic continuing violation and that she could not show that acts occurring more than three years before suit were part of a serial continuing violation because of the hiatus in events while she was at the Alder Street facility for women inmates. The Court of Appeals, applying *Morgan*, held that the County was not entitled to summary judgment because Antonius alleged sufficient facts to show an act contributing to the hostile work environment occurred within the limitations period. The County maintains, however, that even under *Morgan* partial summary judgment was proper.

---

[4] While the Court in *Morgan* declined to rule on whether a "discovery rule" of accrual would apply as to a discrete act, *Morgan*, 536 U.S. at 114 n.7, its discussion of that matter is unrelated to its analysis of hostile work environment claims. The Court expressly said that whether the plaintiff knew or should have known that the acts occurring before the limitations period were actionable has no bearing on the timeliness of a hostile work environment claim. *Morgan*, 536 U.S. at 117-18. That knowledge could be relevant, however, if the employer asserts an equitable defense to which plaintiff's actual or constructive knowledge is relevant.

[5] The County also says that the Court in *Morgan* did not "clearly address whether the timely events of claimed discrimination must impact the terms and conditions of employment." Pet. for Review at 18. The Court did engage in this analysis, however. *Morgan*, 536 U.S. at 115-17.

¶31 Under *Morgan*, a "court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Morgan*, 536 U.S. at 120. The acts must have some relationship to each other to constitute part of the same hostile work environment claim, and if there is no relation, or if "for some other reason, such as certain intervening action by the employer" the act is "no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts" as part of one hostile work environment claim. *Morgan*, 536 U.S. at 118.

¶32 Here, the trial court did not assess the County's motion for summary judgment under *Morgan*. In these circumstances, where the trial court applied the wrong legal standard to determine whether summary judgment was appropriate, the proper course is to remand this case to the trial court. If the County again moves for summary judgment, the trial court can then determine if material issues of fact exist under *Morgan*. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir. 2002) (remanding for further proceedings under *Morgan* where summary judgment had been granted in a hostile work environment case by a trial court applying the continuing violation doctrine; court noted that the Court in *Morgan* had "eschewed the use of the continuing violation doctrine in hostile work environment cases" and thus "essentially redefined the application of statutes of limitations to cases such as the one at hand"). On remand, the County may assert any equitable defenses it may have, as the Court explained in *Morgan*.

¶33 For purposes of remand, we address one additional matter. The County maintains that under *Morgan* a gap in the events, such as the approximately one year period that Antonius was assigned to the Alder Street facility, precludes, as a matter of law, a court from considering previous acts to be sufficiently related to any acts occurring within

the statute of limitations period to constitute a single hostile work environment. *Morgan* is to the contrary. The Court presented two hypothetical situations:

> The following scenarios illustrate our point: (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile [work] environment on days 1-100 and on day 401, but there are no acts between days 101-400, Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim.

*Morgan*, 536 U.S. at 118. Thus, a gap, in and of itself, is not a reason to treat acts occurring before and after that gap as not constituting parts of the same unlawful employment practice under *Morgan*.

¶34 Moreover, the cases upon which the County relies do not support its argument. The facts in *Lucas v. Chicago Transit Authority*, 367 F.3d 714 (7th Cir. 2004) are complex, but led to the court's conclusion that an approximate three-year gap between alleged discriminatory acts was not part of the same hostile work environment. The case is distinguishable both because of the length of time involved, and because the last act alleged, the court concluded, occurred entirely by "happenstance" when the employee unexpectedly encountered his former superior and an altercation ensued. *Lucas*, 367 F.3d at 727-28. Other alleged acts within the three year period were insufficiently supported, the court said, or constituted discrete acts within *Morgan*'s analysis. *Lucas*, 367 F.3d at 727. The other case cited by the County, *Selan v. Kiley*, 969 F.2d 560 (7th Cir. 1992), was

decided under the continuing violation doctrine, not *Morgan*.

¶35 In contrast, in *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 892 (D.C. Ct. App. 2003), the court reasoned that under *Morgan*'s analysis "even if there are significant gaps in the occurrence of the acts constituting the unitary hostile work environment claim, the filing of that claim still may be timely." The court reasoned that this is true because the acts constituting a hostile work environment are treated as an indivisible whole. *Lively*, 830 A.2d at 892. Thus, despite an approximately two year gap in events, the court concluded that a reasonable jury could regard the alleged conduct as part of one unlawful employment practice. *Lively*, 830 A.2d at 895-96 (also discussing the evidence).

■ ¶36 Finally, Antonius requests that she be granted reasonable attorney fees on appeal under RCW 49-.60.030(2), RAP 18.1(a) and (i), and *Hinman v. Yakima School District No. 7*, 69 Wn. App. 445, 452-53, 850 P.2d 536 (1993). The Court of Appeals declined to award attorney fees on the basis that Antonius's request was premature because she had not yet prevailed on her hostile work environment claim. *Antonius*, noted at 118 Wn. App. 1011, slip. op. at 9. For the same reason, we decline to award fees at this stage of the proceedings.

## CONCLUSION

¶37 We adopt the analysis in *Morgan* for purposes of determining under state law whether a hostile work environment claim is timely as to all acts alleged to constitute the unlawful employment practice, and affirm the Court of Appeals on this issue. The Court of Appeals also properly reversed the grant of partial summary judgment in favor of the County. We remand the case to the trial court for further proceedings consistent with *Morgan*, in which the County may, if it chooses, move for summary judgment

274

under *Morgan*. The County may assert any equitable defenses it may have.

ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

Reconsideration denied February 25, 2005.