# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TIMOTHY P. MERRIMAN, )
       ) No. 69295-0-I
           Appellant, )
       ) DIVISION ONE
         v. )
       ) UNPUBLISHED OPINION
WHATCOM COUNTY, )
       )
           Respondent. ) FILED: September 9, 2013
       )

APPELWICK, J. — Merriman argues that his former employer, Whatcom County, discriminated against him based on his disability, resulting in a hostile work environment, his constructive discharge, and failure to accommodate his known disability. We affirm.

## FACTS

Timothy Merriman worked for Whatcom County (County) from November 1, 1989 until September 26, 2006. During his time with the County, Merriman supervised and shared a workspace with sisters Nicole Johnston and Heather Holestine. Over time, his relationship with the two women deteriorated and Merriman found it difficult, both psychologically and physically, to work with them.

Merriman suffered an emotional breakdown in March 2003 and needed to take time off work. He claimed this breakdown resulted from Johnston and Holestine's hostile treatment of him. Merriman was eventually diagnosed with depression, bipolar affective disorder, and attention deficit disorder. Merriman notified Whatcom County that his health care provider believed these were lifetime conditions. He also experienced anxiety and stress related to his work situation.

When Merriman returned to work, the County allowed him to relocate his office farther away from Johnston and Holestine. He was permitted to lock his office door and close the blinds, so he could have privacy and separation from the two women.

This accommodation was withdrawn in May 2005 when Holestine and two other witnesses filed a complaint claiming that Merriman had engaged in inappropriate behavior in his office. An administrative hearing panel found that the complaint was groundless, but the County required Merriman to move back into the shared workspace. The County also adopted a policy that all office doors and blinds must be kept open unless an employee was meeting with a client who requested they be closed. And, the County asked that Merriman engage in counseling.

Merriman worked from May 2005 until January 2006, when he suffered another psychiatric breakdown, which he claimed was a direct result of losing the accommodation. On January 30, 2006, Merriman requested that the accommodation be reinstated. He was allowed to move back into the separate office, but was not allowed to lock the door or close the blinds.

On March 9, 2006, the County granted Merriman's Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, request, and he began six weeks of leave. Merriman continued requesting leave in six and twelve week increments until his resignation in September 2006. In August, when he requested another six weeks of leave, Human Resources (HR) Representative Melissa Keeley informed Merriman that his vacation accruals would end on September 22, 2006. Keeley told Merriman that she needed documentation from his healthcare provider to justify unpaid disability leave.

Merriman believed that the County's unrepresented resolution 6.9 did not require him to submit additional medical information.

Merriman also drew Keeley's attention to employee handbook section 113.2, which stated that a leave of absence is limited to 89 days, and failure to return to work before the end of those 89 days will result in termination. Merriman believed the County wished to fire him when his paid leave expired. As a result, he resigned on September 26, 2006. The County sent two letters on September 27 and October 5, 2006, offering Merriman the opportunity to withdraw his resignation and outlining a number of leave options. Merriman did not return to work.

Merriman filed a complaint against Whatcom County on September 22, 2009, alleging damages resulting from a hostile work environment, wrongful discharge, and disability discrimination, among other claims. The County moved to dismiss Merriman's complaint under CR 12(c). It based its motion in part on the position that Merriman failed to allege any facts occurring within the three year statute of limitations for a hostile work environment claim. The trial court granted the County's motion and dismissed Merriman's hostile work environment claim with prejudice.

After the County's CR 12(c) motion, Merriman moved to amend his complaint to plead two additional causes of action: failure to accommodate and constructive discharge. The trial court granted Merriman's motion to amend. Whatcom County moved for summary judgment on Merriman's two amended claims. The County explained that the only act that occurred within the statute of limitations was a September 22, 2006, e-mail from Keeley attempting to clarify Merriman's disability

status and asking him to specify the number of days he was requesting as unpaid leave. The trial court granted the County's motion for summary judgment. Merriman appeals.

## DISCUSSION

Merriman argues that the County discriminated against him based on his disability, resulting in a hostile work environment, his constructive discharge, and unreasonable failure to accommodate his disability. The County argues in response that the three year statute of limitations for discrimination claims bars us from considering many of Merriman's factual allegations.

Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, prohibits employment discrimination based on "the presence of any sensory, mental, or physical disability." RCW 49.60.030(1). The WLAD does not contain its own limitations period. Antonius v. King County, 153 Wn.2d 256, 261, 103 P3d 729 (2004). Discrimination claims must be brought within three years under the general statute of limitations for personal injury actions. Id. at 261-62; RCW 4.16.080(2).

We review a CR 12(c) dismissal de novo. M.H. v. Corp. of Catholic Archbishop of Seattle, 162 Wn. App. 183, 189, 252 P.3d 914, review denied, 173 Wn.2d 1006, 268 P.3d 943 (2011). A dismissal under CR 12(c) is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts that would justify recovery. Id. In undertaking such an analysis, we presume the plaintiff's allegations to be true. Id. A CR 12(c) dismissal should be granted sparingly, only when the plaintiff's allegations show on the face of the complaint that there is some insuperable bar to relief. Id.

We also review summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). In discrimination cases, summary judgment is often inappropriate, because the WLAD mandates liberal construction. Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 777, 249 P.3d 1044, review denied, 172 Wn.2d 1013, 259 P.3d 1109 (2011). Evidence will generally contain reasonable but competing inferences of both discrimination and nondiscrimination that must be resolved by a jury. Id. Courts will, however, grant summary judgment when the plaintiff fails to raise a genuine issue of material fact on one or more prima facie elements. Id. All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. CTVC of Haw., Co. v. Shinawatra, 82 Wn. App. 699, 708, 919 P.2d 1243, 932 P.2d 664 (1996).

I.  Hostile Work Environment

Merriman argues that the trial court erred in dismissing his hostile work environment claim.[1] Merriman filed his first complaint on September 22, 2009. Whatcom County maintains that no allegedly hostile act occurred between September 22 and September 26, 2006, when Merriman resigned. Therefore, the County argues, the Antonius rule is not triggered and the three year statute of limitations bars consideration of any facts occurring prior to September 22, 2006.

---

[1] Specifically, Merriman argues that the trial court improperly dismissed his hostile work environment claim by applying an erroneous per se rule that an employee must be physically present at work to make out such a claim. Merriman claims the court dismissed on this basis at oral argument. The oral argument transcript is not designated in the record and the trial court's written order indicates no such basis for dismissal. Regardless, we can affirm the trial court's decision on any basis supported by the record. Amy v. Kmart of Wash., LLC, 153 Wn. App. 846, 868, 223 P.3d 1247 (2009).

In Antonius, the plaintiff filed suit alleging that King County violated the WLAD by fostering and maintaining a sex-based hostile work environment. 153 Wn.2d at 260. The County moved for summary judgment, arguing that Antonius's suit was untimely as to events occurring more than three years before she filed suit. Id. The Washington Supreme Court rejected the continuing violation doctrine for hostile work environment claims, and instead adopted the U.S. Supreme Court's analysis in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Id. at 269, 273.

In Morgan, the Court concluded that hostile work environment claims "are different in kind from discrete acts," because "[t]heir very nature involves repeated conduct." 536 U.S. at 115. A hostile work environment claim is composed of a series of acts that collectively constitute one unlawful employment practice. Id. at 117. Therefore, provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. Id. The act must be, however, "part of the same unlawful employment practice." Id. at 122.

Under Morgan, then, a court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period. Id. at 120. The acts must have some relationship to each other to constitute part of the same hostile work environment claim. Id. at 118. If there is no relation, the act is no longer part of the same claim and the employee cannot recover for previous acts. Id.

Therefore, the question in Merriman's case is whether some act occurred on or after September 22, 2006, that was part of Whatcom County's allegedly hostile work environment practice. The four elements of a prima facie hostile work environment claim are: (1) the harassment was unwelcome, (2) the harassment was because the individual was a member of a protected class, (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer. Antonius, 153 Wn.2d at 261. The third element requires that the harassment be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Id. The employer's conduct must be both objectively abusive and subjectively perceived as abusive by the victim. Clarke v. Office of the Attorney Gen., 133 Wn. App. 767, 787, 138 P.3d 144 (2006).

Merriman alleges that the County created a hostile work environment by forcing him to work with Johnston and Holestine and denying the accommodation of locking his office door and closing the blinds. Merriman conceded at oral argument that no affirmative hostile acts occurred during the limitations period. He nevertheless argues that the County's continuing failure to remedy the allegedly hostile environment constitutes a hostile act under Antonius. He is unable to provide any authority from Washington or elsewhere that supports his argument.

The events that took place on September 22, 2006, and after cannot be categorized as part of an allegedly unlawful employment practice. On September 22, 2006, Merriman e-mailed HR staff expressing his concerns that employee handbook provisions meant his employment would terminate when he exhausted his paid leave.

7

He also stated his belief that the County had ulterior motives and hoped to fire him. He instructed the County to contact his attorney. That same day, Keeley e-mailed Merriman's attorney:

> We received Mr. Merriman's e[-]mail and will review it in light of our policies for managing extended leaves of absence. We are presently unsure exactly how much unpaid leave Mr. Merriman is requesting. If he is able to specify the number of calendar days he wishes to be designated as unpaid leave, it would certainly assist our ability to respond. We hope to respond to him by next Thursday, September 28.
>
> Our typical approach when FMLA leave or other accruals are close to depletion with no immediate prospect of the employee's return to work, is to communicate with the employee about his leave status, and inquire whether he wishes to request up to 89 days of unpaid leave that may be granted in the discretion of the County Executive. In the rare instance that the employee remains absent from work after the exhaustion of that period of leave granted in the discretion of the County, we then move to an ADA [(Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213)] analysis: is the employee disabled as defined for purposes of the ADA, and is there a means of reasonably accommodating continued absences? It sounds as though Tim may be seeking such an ADA accommodation now rather than avail himself of the intermediate step of discretionary leave of up to 89 days. Is that correct? In that case we would be seeking input from Tim on the nature and extent of the accommodation that he seeks, and then making an appropriate determination on that request. We have no desire to be contentious in our communication with Tim and look forward to working with him through you to satisfactory resolution of the question of appropriate leave status and accompanying documentation.

Four days later, on September 26, Merriman resigned.

While Merriman may have subjectively perceived the September 22 e-mail to be abusive, it is not objectively so. Rather, the e-mail demonstrates the County's desire to accommodate Merriman's disability by providing the leave that he needed. We decline to characterize the County's attempt to sort out Merriman's long-term leave situation as an unlawful employment practice. Furthermore, the County twice offered for Merriman to withdraw his resignation, offering a number of leave options. The County's e-mail is

8

not part of the same series of acts giving rise to the allegedly hostile work environment with Holestine and Johnston. In Adams v. Able Bldg. Supply, Inc., an employer's frequent vocal and physical outbursts were sufficient to create a question of fact as to whether there was a gender-based hostile work environment. 114 Wn. App. 291, 295-97, 57 P.3d 280 (2002). No such hostile act occurred during the limitations period here. The trial court did not err in dismissing Merriman's hostile work environment claim, because it is time barred under the Antonius rule.

## II.    Constructive Discharge

Merriman argues that the trial court erred in dismissing his constructive discharge claim on summary judgment. To establish constructive discharge, an employee must show: (1) a deliberate act by the employer that made working conditions so intolerable that a reasonable person in the employee's shoes would have felt compelled to resign; and (2) that he or she resigned because of the conditions and not for some other reason. Washington v. Boeing Co., 105 Wn. App. 1, 15, 19 P.3d 1041 (2000). The first requirement can be shown by aggravated circumstances or a continuous pattern of discriminatory treatment. Id. at 16. An employee's frustration is not enough to show intolerable conditions. Crownover v. Dept. of Transp., 165 Wn. App. 131, 149, 265 P.3d 971 (2011), review denied, 173 Wn.2d 1030, 274 P.3d 374 (2012). A resignation is presumed to be voluntary and the employee must introduce evidence to rebut that presumption. Washington, 105 Wn. App. at 16. A resignation will still be voluntary when an employee resigns because he or she is dissatisfied with the working conditions. Crownover, 165 Wn. App. at 149.

Merriman argues that he resigned because of the intolerable conditions resulting from the County's refusal to accommodate his disability and from being forced to work with Holestine and Johnston. He also maintains that his psychiatric deterioration was exacerbated by HR's insistence that he provide medical information to support his unpaid leave. These purported reasons for his resignation are not supported by the record.

Merriman explained in a deposition that "I resigned from Whatcom County 'cause I didn't want to get fired." Merriman believed that he would be fired when his paid leave status expired. He claimed that "[e]verything up to this point had led me to believe that I was AWOL [(absent without leave)] starting on September 22nd." This belief was based on his previous work experience and a dated employee handbook provision, which stated that "'failure to return to work on or before the end of the leave period, which is 89 days, will result in termination of employment.'"

However, Merriman admitted that the County never told him or indicated that he would be fired if he failed to return to work by a certain date. In fact, the County's correspondence with Merriman suggests just the opposite. For instance, Keeley's September 22 e-mail stated: "We have no desire to be contentious in our communication with Tim and look forward to working with him through [his attorney] to satisfactory resolution of the question of appropriate leave status and accompanying documentation." This clearly indicates the County's intent to retain Merriman as an employee and work with him to resolve his unpaid leave status. Moreover, the County twice offered for Merriman to withdraw his resignation and resume employment. In that

correspondence, the County suggested several possible leave solutions that could accommodate his disability.

As a result, Merriman's constructive discharge claim fails for several reasons. First, the purported intolerable conditions were not the true reason for his resignation. Second, a reasonable person would not have felt compelled to resign under the circumstances. The County never indicated to Merriman that he needed to return to work by a certain date or risk termination. Merriman voluntarily resigned, because of his subjective belief that termination was imminent. Moreover, it was the County's standard practice to require medical documentation to justify unpaid leave, and cannot be characterized as discriminatory. Merriman's frustration at having to provide such documentation does not create intolerable conditions. Merriman failed to raise a genuine issue of material fact on either of the prima facie elements required to establish constructive discharge, so the trial court did not err in dismissing the claim.

## III. Failure to Accommodate

Merriman argues that the trial court erred by dismissing on summary judgment his claim that Whatcom County failed to accommodate his disability. The WLAD requires employers to reasonably accommodate a disabled employee unless the accommodation would be an undue hardship. RCW 49.60.180(2); Frisino, 160 Wn. App. at 777. The employee must establish four elements to prove discrimination based on lack of accommodation: (1) the employee had a sensory, mental, or physical disability that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee

gave the employer notice of the disability and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the disability. Davis v. Microsoft Corp., 149 Wn.2d 521, 532, 70 P.3d 126 (2003).

Whatcom County applies the Antonius rule to Merriman's failure to accommodate claim, arguing that the court can only consider events occurring between September 22 and 26, 2006. However, Antonius applies to hostile work environment claims, not failure to accommodate claims. Instead, the limitations period for a failure to accommodate claim accrues when the employer denies the request for accommodation and communicates that decision to the employee. Albright v. State, 65 Wn. App. 763, 767-68, 829 P.2d 1114 (1992). In other words, the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act became most painful. Id. at 767. Antonius recognized this distinction. 153 Wn.2d at 264. A hostile work environment consists of repeated conduct, whereas discriminatory acts like termination or failure to promote are discrete. Id. For discrete acts, the limitations period runs from the act itself. Id. If the limitations period has run, a discrete act is not actionable even if it relates to acts alleged in a timely filed complaint. Id. Accordingly, failure to accommodate is a discrete act that occurs when the employer denies accommodation.

Under this limitations period, Merriman's failure to accommodate claim clearly fails. Merriman originally requested accommodation in April 2004. That request was initially granted and Merriman was allowed to lock his office door and close the blinds.

12

The County withdrew the accommodation in May 2005. On January 31, 2006, HR received Merriman's request that the accommodation be reinstated. This request was denied and communicated to Merriman on February 10, 2006. At the latest, then, the statute of limitations on Merriman's failure to accommodate claim accrued on February 10, 2006, when his request for accommodation was officially denied and communicated to him. Merriman did not file his complaint until September 22, 2009—well outside of the three year statutory limitations period. Because Merriman's failure to accommodate claim is time barred, the trial court did not err in dismissing it on summary judgment.[2]

We affirm.

WE CONCUR:

---

[2] Merriman also argues that County failed to accommodate him by not allowing him to take unpaid leave without providing further medical information. He fails to articulate why his disability limited him from providing further medical information and why such an accommodation was medically necessary for his disability.