[No. 27499-6-I.    Division One.    April 6, 1992.]

GREGORY GARY ALBRIGHT, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*John R. Burns* and *Hafer, Price, Rinehart & Schwerin,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Lisa L. Sutton, Assistant,* for respondents.

WEBSTER, A.C.J. — Gregory Gary Albright appeals the trial court's summary dismissal of his handicap discrimination, constructive discharge, defamation, and tort of outrage claims.

## FACTS

In 1982, Albright worked at Fircrest School as an Attendant Counselor. In June of 1982, he was transferred from his counselor position at Fircrest to a desk job (away from the school) as a Developmental Disabilities Specialist. At the beginning of the rotation, Albright was advised that under merit system rules governing civil service employees, he would retain his former position as an Attendant Counselor and would return to that position at the end of the rotation.

On November 11, 1983, in a letter from Fircrest's superintendent Norm Davis, Albright was informed he would be required to return to his counselor position at Fircrest beginning February 11, 1984. On January 10, 1984, Albright, by letter, requested a low-stress assignment to accommodate his condition of hypertension. Attached to Albright's letter was a subsequent handwritten internal response from program director Dolly Skow. The response stated "Albright has a problem with perceiving the *truth* as well as *the chain of command* . . . I also feel his request is discriminatory. I can not support special treatment." Albright received no response to his request.

On January 30, 1984, Albright met with Davis, again requesting a low stress assignment. On February 2, 1984, Albright made the same request to Dolly Skow. On February 8, 1984, Skow specifically ordered Albright, both orally and in writing, to report to work by February 14, 1984. Albright did not report for work on the 14th. That same day, Albright wrote a letter to Davis which acknowledged (1) the January 10, 1984, letter requesting another assignment for health reasons, and (2) that Davis had told him it was not Davis's intention to have Albright return to Fircrest as a counselor. The letter also stated "I realize that no other job offers were promised to me other than what I have been assigned to."

After successive days when Albright failed to report to work, Fircrest requested he submit a claim for sick leave. On February 21, 1984, Albright responded by submitting a doctor's note stating he was disabled and again requested a "low stress" assignment. Fircrest then requested a confirmation letter with more information from the doctor (which was received on March 1, 1984).

On February 23, 1984, Skow sent Albright a letter denying his request for an accommodation. The letter stated:

> Your stress condition requiring a light duty assignment does not fall into the on-the-job injury category. There is no light duty for non-job related injuries/illness at Fircrest School. I am therefore requiring you to be thoroughly evaluated by a

second physician as to your abilities to carry out the job functions of [attendant counselor].

When Albright did not report for work as scheduled, Fircrest scheduled an evaluation by a psychiatrist to verify whether his stress-related condition was disabling as alleged. On February 28, 1984, Skow issued a disciplinary writeup concerning Albright's failure to begin the job as scheduled and set up an appointment for Albright to be examined by a psychiatrist.

On March 1, 1984, Davis wrote on an internal memo (which dealt with Albright's request): "let[']s discuss [Albright] further" and noted that there were other possible light-duty assignments ("laundry/coffee shop/dietary/security").

Prior to the scheduled appointment with the psychiatrist, Fircrest offered Albright the opportunity to resign before the scheduled appointment in exchange for Fircrest's promise not to contest an unemployment benefits claim. Albright accepted this offer and voluntarily resigned by letter dated March 8, 1984.

On February 18, 1987, Albright filed suit claiming: (1) Fircrest discriminated against him on the basis of his handicap; (2) certain "whistleblowing" activity on his part caused Fircrest to "constructively discharge" him; (3) he was defamed; and (4) outrage. Prior to trial, the State moved for summary judgment claiming: (1) the action was time barred; (2) there was no constructive discharge case since Albright failed to exhaust his available statutory and contractual remedies; (3) the actions were not protected as "whistleblowing" since no report was made to the State Auditor's Office as required by the whistleblowing statute; (4) there was no defamation claim since the alleged statements were made by a supervisor during internal evaluations and, therefore, were privileged. The trial court granted the State's motion for summary judgment and Albright now appeals.

## DISCUSSION

■ We first decide whether the trial court erred in granting the State's summary judgment on the grounds that Albright's action was time barred by the 3-year statute of

limitations for discrimination claims. RCW 4.16.080(2); *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wn. App. 607, 613, 676 P.2d 545 (1984) (claims under RCW 49.60, such as those for handicap discrimination, must be filed within the 3-year limitation of RCW 4.16.080). Albright claims this ruling was in error since the statute of limitations did not accrue until Fircrest made and communicated the decision to Albright that his handicap would not be accommodated. According to Albright, this occurred on February 23, 1984, when Fircrest informed him they would not accommodate his condition of hypertension by assigning him to a low-stress job. We agree.

In *Delaware State College v. Ricks*, 449 U.S. 250, 259, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980), the United States Supreme Court stated that the statute of limitations for an alleged discrimination claim accrued when the decision to deny a college professor tenure was made and communicated to the professor (regardless of the fact that the effects of the tenure denial, actual loss of position, did not occur until later). *See also Chardon v. Fernandez*, 454 U.S. 6, 8, 70 L. Ed. 2d 6, 102 S. Ct. 28 (1981) ("proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful [*i.e.,* when the operative decision was made and notice was given]." The court held that as in *Ricks*, the plaintiff received notice when he received letters that a final decision had been made); *Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) (the court held that the time period for filing a complaint for discrimination begins to run when the facts that would support a charge of discrimination have become apparent to a reasonably prudent person); *Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 818 P.2d 1362 (1991).

We find, under the preceding authority, that the statute of limitations did not accrue until February 23, 1984, when Albright's request for an accommodation was officially denied and communicated to him. The State claims they denied any accommodation in the November 11, 1983, memo. However, that document fails to make any mention

of either the alleged handicap or Fircrest's refusal to accommodate it, and instead only states that Albright would be required to return to his counselor position. In fact, Albright did not even request an accommodation for his handicap until January 10, 1984, which was 2 months after the November 11 memo stating he would be required to return to his counselor position at Fircrest. Since the complaint, which was filed on February 18, 1987, was filed within 3 years of the February 23, 1984, accrual date, the complaint was timely.

■ We next address Albright's claim that he was "constructively discharged" in retaliation for "whistleblowing" (*i.e.*, reporting staff misconduct including physical and sexual abuse of patients, improper medication, favoritism, and theft).[1] *See Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) ("we recognize the public policy found in protecting employees who are discharged in retaliation for reporting employer misconduct, *i.e.*, employee 'whistleblowing' activity"). We find that Albright's claim must fail. First, our courts have questioned whether the doctrine of constructive discharge applies to employment situations, such as the one encountered here, which are governed by civil service rules.[2] *Micone v. Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 643 n.2, 722 P.2d 1369 (the doctrine of constructive discharge is generally, if not exclusively, applied to employment-at-will

---

[1]Albright claims that the following evidence portrays that the reporting of the misconduct caused the constructive discharge: (1) Skow's notation on Albright's January 10, 1984, letter stating "I am feeling Albright has a problem with perceiving the truth as well as the chain of command" and (2) Skow's comment on his resignation letter stating he "understands neither appropriate channels for communication or the chain of command . . . [and] an unwillingness to accept appropriate direction from positions of authority." Albright claims this evidence establishes a prima facie case of the wrongful discharge tort (reports of misconduct, motivation, and forced resignation), thereby precluding summary judgment.

[2]Albright, as a public employee, had other statutory remedies which he failed to exhaust. As a state civil service employee, Albright had rights under WAC 356 and the merit system rules adopted pursuant to RCW 41.06. Furthermore, Albright could have appealed to the Personnel Appeals Board or pursued his rights to grieve the decision under his collective bargaining agreement.

situations), *review denied*, 107 Wn.2d 1010 (1986). Second, we find that even if the doctrine were applicable, the facts of this case do not support such a claim since the only evidence offered in support are Skow's notations on two letters sent to Fircrest by Albright which do not even reference any "whistle-blowing" activity.

■ We next decide whether the trial court erred in dismissing Albright's defamation claim. Albright claims that a material issue of fact was raised as to whether Skow made slanderous statements to Albright's subsequent employer/ supervisor at the University of Washington. The State, citing *Dunlap v. Wayne*, 105 Wn.2d 529, 716 P.2d 842 (1986), argues that Albright's claim must fail since this court cannot consider inadmissible hearsay statements when ruling on a motion for summary judgment. We agree.

In *Dunlap*, the court stated:

> [T]he plaintiff has offered inadmissible hearsay to establish that [the defendant] made oral defamatory statements. A court cannot consider inadmissible evidence when ruling on a motion for summary judgment.

*Dunlap*, at 535. The court held that since the defendant denied the statements the plaintiff attempted to have introduced, the hearsay "does not qualify as evidence [since a] party must provide affirmative factual evidence to oppose a motion for summary judgment." *Dunlap*, at 536. Here, the only proof provided was Albright's own allegations in his complaint, his declaration, and his answer to interrogatories, where he claimed that Skow had suggested to his subsequent supervisor that he was mentally ill, emotionally disturbed, and dangerous to other staff members.[3] Under

---

[3]Albright claims that Skow's notation on Albright's January 10, 1984, letter (that Albright had a problem "perceiving the truth") and the demand that he see a psychiatrist (which, according to Albright, suggested he was mentally incompetent) also established a material fact as to whether he was defamed. However, as the State points out, RCW 4.16.100(1) establishes a 2-year statute of limitations for defamation claims and the above statements took place more than 2 years prior to the filing of this suit on February 18, 1987. Albright virtually concedes that the action is time barred in regards to these two statements since he does not rebut the State's argument in his reply brief except by noting that the State raises the

*Dunlap*,[4] these hearsay statements were inadmissible, especially considering Albright's admission that he did not know "for a fact" whether Skow had made the statements and the subsequent supervisor's denial he had received information regarding Albright's "mental health" or "the circumstances of him leaving DSHS".

■ Finally, we address Albright's claim that since Fircrest ordered him to undergo a psychiatric evaluation, a factual basis was established for a tort of outrage claim, thereby precluding summary judgment. To establish the tort of outrage, the conduct must have been "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975). Here, the record establishes that the motive for ordering the psychiatric exam was to verify the severity of the alleged disability. We find that the conduct complained of did not reach the level of "outrageousness" required to establish a claim for the tort of outrage.

The trial court's ruling that the handicap discrimination claim was time barred is reversed and the judgment dismissing the constructive discharge, defamation, and tort of outrage claims is affirmed.

COLEMAN and AGID, JJ., concur.

---

"timeliness" issue for the first time on appeal. Consequently, these two allegations of defamatory conduct will not be considered.

[4]Albright claims that *Dunlap* does not apply since
   [t]his case is not a situation in which the non-moving party presents only hearsay that is denied by the person to whom it is attributed. Our case presents a situation in which the non-moving party identifies *three distinct and mutually corroborating sources* . . ..
(Italics ours.) However, Albright's premise is flawed since two of the three alleged "corroborating sources" are not relevant due to the 2-year statute of limitations (see footnote 3).