[No. 12206-9-III.   Division Three.   April 20, 1993.]

HELEN HINMAN, *Appellant,* v. YAKIMA SCHOOL DISTRICT NO. 7, *Respondent.*

*Richard R. Johnson* and *Velikanje, Moore & Shore,* for appellant.

*Walter G. Meyer, Mark D. Watson,* and *Meyer, Fluegge & Tenney; Rocky L. Jackson* and *Menke & Jackson,* for respondent.

THOMPSON, A.C.J. — Helen Hinman appeals a summary judgment dismissing her handicap discrimination claim against her employer, Yakima School District 7. She contends the trial court erroneously concluded that her claim was barred both by the applicable statute of limitation and by her receipt of workers' compensation benefits. We reverse and remand for trial.

In the fall of 1982, Ms. Hinman became a school counselor at Davis High School in Yakima. Ms. Hinman had a history of asthma and her condition was aggravated by secondary cigarette smoke.

In the fall of 1983, the faculty smoking lounge at Davis High School was moved into the same building where the counseling offices were located. It was approximately 35 feet from the door of Ms. Hinman's office. When asked, she told the principal she was bothered by smoke coming from the lounge.

Ms. Hinman placed a portable air purifier in her office and avoided the smoking lounge. In an attempt to keep the lounge doors closed, the school district installed hydraulic door closers and posted signs instructing the faculty to close the doors. Ms. Hinman said these measures provided little relief. In October 1984, an electronic air cleaner was installed in the smoking lounge. Ms. Hinman was still affected by passive smoke in her office and in the general administrative area. On April 17, 1985, she took medical leave due to asthma.

In June 1985, a new principal was hired for Davis High School. He called Ms. Hinman during the summer months. In her affidavit, Ms. Hinman states he urged her to return and promised either the smoking lounge would be moved or some alternative arrangement would be made to avoid the problem.

Ms. Hinman returned to Davis High School in the fall of 1985, but the smoking lounge was not relocated. There is a dispute of fact as to whether the principal offered to move her office within the same building. Ms. Hinman averred it would have been unacceptable even if he had because it would have isolated her from other counselors and would not have provided escape from the passive smoke in the administrative offices. According to Ms. Hinman, she was told she would need to commence a "friendly lawsuit" to get the smoking lounge removed.

The smoking lounge was finally moved on October 23, 1985. However, Ms. Hinman was placed in the Intensive Care Unit of Yakima Valley Memorial Hospital for ventilation and treatment of her asthmatic condition the following day. On November 4, 1985, she asked the school district to

change her school assignment. She was reassigned to Franklin Middle School and began work there the following month.

Ms. Hinman filed a claim with the Department of Labor and Industries on May 19, 1986. On February 2, 1990, the Department determined Ms. Hinman suffered from an occupational disease, aggravation of chronic bronchial asthma, caused by exposure to tobacco smoke in the workplace. Her claim for benefits was allowed.

Ms. Hinman filed this lawsuit in October 1987. She claimed the school district failed to provide her a safe and healthful workplace and did not reasonably accommodate her handicap as required by RCW 49.60.[1]

The school district moved for summary judgment, contending Ms. Hinman's lawsuit was barred by the 3-year limitation period in RCW 4.16.080(2)[2] and her only remedies were those available under the Industrial Insurance Act.

Ms. Hinman conceded that her first cause of action for failure to provide a safe and healthful workplace should be dismissed because after she filed her lawsuit, the Board of Industrial Insurance Appeals determined she had a compensable occupational disease. However, she argued her RCW 49.60 claim was not time barred, nor were the damages she claimed under RCW 49.60 barred because they were not the same as those she was being compensated for under the Industrial Insurance Act.

---

[1] In pertinent part, RCW 49.60.180(3) states it is an unfair practice for any employer:

"To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap . . .". (Italics ours.)

[2] RCW 4.16.080(2) states:

"The following actions shall be commenced within three years:

". . . .

"(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated".

The trial court granted the school district's motion for summary judgment and dismissed Ms. Hinman's claims with prejudice. Ms. Hinman timely appealed.

STATUTE OF LIMITATION

We first determine whether Ms. Hinman's unfair practices claim was barred by the 3-year limitation for discrimination claims. RCW 4.16.080(2).

Ms. Hinman contends the limitation period commenced to run during the fall of 1985 when she returned to work to find the smoking lounge had not been moved as promised that summer. According to Ms. Hinman, a claim arises when the employer decides not to accommodate the employee's handicap and communicates that decision to the employee. She relies, in part, on *Albright v. State*, 65 Wn. App. 763, 829 P.2d 1114 (1992).

The school district contends Ms. Hinman's complaint asserts a claim arising on or about August 1983 and thereafter. According to the school district, a claim accrues when an injury is first suffered even though all of the damages do not arise until a later time. It relies, in part, on *Steele v. Organon, Inc.*, 43 Wn. App. 230, 234-35, 716 P.2d 920, 922, *review denied*, 106 Wn.2d 1008 (1986) and *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wn. App. 607, 613-14, 676 P.2d 545 (1984).

The parties agree the 3-year limitation period established by RCW 4.16.080(2) applies to Ms. Hinman's claim of handicap discrimination. *See Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 809, 818 P.2d 1362 (1991). The only dispute relates to when her cause of action accrued. Her complaint was filed October 7, 1987.

A cause of action for handicap discrimination accrues when the employer makes a decision not to accommodate the employee's handicap and that decision is communicated to the employee. *Albright*, at 767 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 259, 66 L. Ed. 2d 431, 101 S.

Ct. 498 (1980) (under federal rule statute begins to run when discriminatory acts occur, not when consequences of acts manifest themselves)). *See also Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985). At that time, the facts to support a discrimination claim become apparent to a reasonably prudent person. *See Douchette*, at 813; *Boyd*, at 414. Our application of *Albright* to this case is consistent with *Steele*, in which we applied the general rule that a statute of limitation commences to run when the plaintiff discovers or should discover all the essential elements of her cause of action. *See also Lewis*, at 613-14.

Here, the faculty smoking lounge was moved into Ms. Hinman's building in the fall of 1983. The principal knew the smoke was aggravating Ms. Hinman's asthmatic condition shortly thereafter, although the school district did not officially and unequivocally refuse to make an accommodation during 1983 and 1984. To the contrary, it is undisputed that during 1983-84 the school district installed hydraulic closers on the doors to the smoking lounge, installed an air cleaner, and posted signs instructing faculty members to keep the smoking lounge doors closed. The alleged discriminatory act did not occur until the fall of 1985, *after* the school district and Ms. Hinman both knew the measures taken by the school district were unsuccessful, and *after* the school district failed to keep its alleged promise to move the lounge.

Based on *Albright*, *Boyd*, and *Douchette*, Ms. Hinman's cause of action accrued when she returned to Davis High School in the fall of 1985. Since her lawsuit was commenced in October 1987, it was well within the 3-year limitation period. We therefore need not address Ms. Hinman's contention that the limitation period was affected by the Washington Clean Indoor Air Act, RCW 70.160, an assertion she makes for the first time on appeal.

### INDUSTRIAL INSURANCE ACT

We address next Ms. Hinman's contention her lawsuit is not barred by the Industrial Insurance Act (IIA). She argues that damages for emotional distress are recoverable as actual damages under RCW 49.60, but are not recoverable under

the IIA. *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986).

The school district contends Ms. Hinman's claim for damages resulted from a compensable workplace physical injury/occupational disease. According to the school district, when claimed damages arise out of a compensable injury/occupational disease, the immunity provisions of the IIA apply notwithstanding the Law Against Discrimination (LAD).[3] *Reese*, at 573.

*Reese* held there are no double recovery problems with simultaneous IIA and LAD actions because there are two distinct wrongs involved. Damages are recoverable for a LAD claim when the employer refuses to reasonably accommodate the handicap. The IIA bar to a suit against the employer is lifted when the employer has deliberately injured the worker.

> For purposes of the Law Against Discrimination, it does not matter how the handicap arose; only the employer's response to the handicap matters. . . .
>
> . . . . .
> . . . Because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (an IIA claim is indifferent to employer fault, a discrimination claim requires such fault), the two injuries cannot be "the same injury."

*Reese*, at 572-74. *See* RCW 51.24.020; *Cagle*, at 921 (dicta); *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 696 P.2d 1238 (1985).

---

[3]The exclusive remedy provisions of the IIA are contained in RCW 51.04.010 and RCW 51.32.010. RCW 51.04.010 provides in pertinent part: "[S]ure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided."

RCW 51.32.010 provides in pertinent part:

"Each worker injured in the course of his or her employment . . . shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever . . .".

Although the school district contends Ms. Hinman did not claim damages for emotional distress, the evidence before the trial court raises an issue of fact sufficient to preclude summary judgment. Her complaint contains a claim for emotional distress, and the memorandum opposing summary judgment sets forth a claim for emotional distress and damages separate from those under the IIA. Her response to the school district's question during deposition as to whether she was claiming damages for emotional distress was "I'm not sure." That response is too equivocal to bar her cause of action.

■ Based on the pleadings and affidavits, viewed in a light most favorable to Ms. Hinman, a genuine issue of material fact exists as to whether she sustained injuries different from her physical injury which injuries were allegedly caused by the school district's deliberate discriminatory acts. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Reese.* Therefore, her RCW 49.60 claim for damages is not barred. Should Ms. Hinman prevail at trial, IIA benefits may be deducted from her discrimination damages if necessary to prevent double recovery. *Reese*, at 574.[4]

## ATTORNEY FEES

Finally, Ms. Hinman contends she is entitled to attorney fees on appeal if she prevails. She cites RAP 18.1; RCW 49.60.030(2); and *Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991).

■ *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 844 P.2d 389 (1993) affirmed *Allison* and held that pursuant to RCW 49.60.030(2),[5] attorney fees should be awarded to the pre-

---

[4]*Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 568, 829 P.2d 196, *review granted*, 120 Wn.2d 1011 (1992) applied the offset principles enunciated in *Reese.* However, the Supreme Court accepted review of *Wheeler* on this issue. The trial court will be bound by *Reese* and the Supreme Court's subsequent decision in *Wheeler* as to any offset.

[5]RCW 49.60.030(2) provides:

"Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further

vailing party in a discrimination appeal. However, in both *Xieng* and *Allison*, the merits of the case had been reached. Here, like *Reese*, the appeal is from a summary judgment. *Reese*, at 580, denied fees on appeal from a summary judgment because the claims under RCW 49.60 had not yet been decided on the *merits*. *Reese* controls. Entitlement to attorney fees cannot be determined until after trial on the merits.

We reverse and remand for trial.

MUNSON and SWEENEY, JJ., concur.

Reconsideration denied June 7, 1993.

Review by Supreme Court pending May 10, 1994.

violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964; . . .".