

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JAMES A. KUEHN,

    Appellant,

  v.

SNOHOMISH COUNTY,

    Respondent.

No. 71743-0-I

DIVISION ONE

UNPUBLISHED

FILED: April 6, 2015

Cox, J. — A cause of action for wrongful termination in discrimination cases accrues when notice of termination is communicated to the employee.[1] Likewise, a cause of action for disability discrimination accrues when the employer makes a decision not to accommodate the employee's disability and communicates that decision to the employee.[2] Here, Snohomish County informed James Kuehn, in writing, by letters dated and received on August 2, 2007, that he was discharged as of the date specified. These letters provided reasons for this action and communicated the County's decision not to accommodate Kuehn's disability. His failure to commence this action within

---

[1] See Douchette v. Bethel Sch. Dist. No. 403, 117 Wn.2d 805, 816, 818 P.2d 1362 (1991) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)).

[2] Hintz v. Kitsap County, 92 Wn. App. 10, 16, 960 P.2d 946 (1998); Hinman v. Yakima Sch. Dist. No. 7, 69 Wn. App. 445, 449, 850 P.2d 536 (1993); Albright v. State, 65 Wn. App. 763, 767, 829 P.2d 1114 (1992).

three years of this date bars the claims that he asserts. Accordingly, we affirm the summary judgment of dismissal that the trial court granted to Snohomish County.

Kuehn began working for Snohomish County in 1991. In 1993, he started work as a Road Maintenance Worker, and he continued to work in the Road Maintenance Division until his termination in 2007.

In 1999, Kuehn informed the County that he suffered from a sleep disorder that affected his ability to arrive at work on time on a regular basis. He requested various accommodations, which the County granted. The County notified Kuehn that it would excuse tardiness that was directly related to his medical condition. Any tardiness or absence that was not directly related to his medical condition would be subject to discipline.

In 2002, the County determined that Kuehn's medical condition qualified him for leave under the Family Medical Leave Act. By letter, it informed Kuehn that he had to notify the County, in writing, when his tardiness or absence was for medical reasons. The County reminded Kuehn that under this accommodation plan, he had "not been granted unlimited permission to be late to or absent from work at any time [or] for any reason."[3] The letter also stated, "Absences or tardiness unrelated to [Kuehn's] medical condition will be subject to the Division's no fault policy . . . of which [Kuehn is] on notice."[4] And it reiterated, "Unexcused

_____

[3] Clerk's Papers at 50 (emphasis omitted).

[4] Id.

absences or late arrivals will be treated in accordance with County and Division policy . . . and shall be subject to discipline, up to and including termination."[5]

Under the Road Maintenance Division tardiness policy, unexcused tardiness is a ground for discipline as follows:

> a. First instance, documented verbal reprimand.
> b. Second instance, written reprimand.
> c. Third instance, one day off with no pay.
> d. Fourth instance, one week off with no pay.
> e. Fifth instance, one month off with no pay.
> f. Sixth instance, termination.[6]

By early 2007, Kuehn had several unexcused instances of tardiness. In January 2007, the County imposed discipline against Kuehn for another instance of tardiness. In accordance with the tardiness policy, it imposed a one week suspension without pay.

On June 13, 2007, Kuehn called in late for work. The County held a pre-disciplinary hearing on June 18. In response to the allegations against him, Kuehn told the County that he had slept through his alarms. He did not state that his tardiness was linked in any way to his medical condition. Nonetheless, the County stated that "the information previously provided to the County indicates a potential connection" and it decided to hold the disciplinary decision in abeyance in order to allow Kuehn to provide any additional information.[7] The County told

---

[5] Id. at 51.

[6] Id. at 53.

[7] Id. at 125.

3

Kuehn to provide any information "not later than July 16, 2007" as the County would make its determination "at that time."[8]

On June 27, 2007, Kuehn again called in late for work. The County held a pre-disciplinary hearing on July 9. In response to the allegations against him, Kuehn said he slept through his alarms and his wake up call. The County's investigation determined that Kuehn did not hear his wake up call because other occupants in his home had removed his phone from his bedroom. Kuehn corroborated this at the hearing.

On July 10, 2007, the County received a facsimile from Kuehn's medical provider stating that Kuehn was scheduled for additional medical testing on July 17. It indicated that further paperwork would be forwarded to the County after the tests were completed, and it asked the County to allow two weeks for the results. Kuehn's supervisor testified in his declaration that the County extended the deadline to July 31, 2007, but it did not receive any additional information from Kuehn or his medical providers before August 2, 2007.

On August 2, 2007, the County sent, and Kuehn received, two letters. One letter contained the results of his June 18, 2007 pre-disciplinary hearing. The other contained the results of his July 9, 2007 pre-disciplinary hearing.

With respect to the June 18, 2007 hearing, the County determined that Kuehn violated the tardiness policy and that this was his fifth instance of

---

[8] Id.

tardiness. It found no mitigating factors. The County imposed a one month suspension beginning August 6, 2007 for this violation.

With respect to the July 9, 2007 hearing, the County determined that Kuehn violated the tardiness policy and that this was his sixth instance of tardiness. It found no mitigating factors. The County imposed termination for this violation. This letter stated that Kuehn's termination was effective on August 16, 2007 and that he would be on paid administrative leave until that date. This letter also stated, "Please note that due to the discipline imposed herein, I am holding in abeyance the discipline imposed with regard to your fifth instance of tardiness, per the Road Maintenance Division Tardiness Policy for the instance of tardiness on June 13, 2007."[9]

Kuehn filed two grievances in response to these disciplinary actions. He also provided a letter from his doctor dated August 16, 2007 that related to his most recent appointment. The County held a step one grievance meeting on August 20, 2007. Kuehn's representative argued that the County should have allowed more time for Kuehn's healthcare providers to provide information before making a disciplinary determination, that Kuehn was not responsible for the mishandling of documents by his doctor, and that the doctor's August 16 letter should be taken into consideration. The County denied the grievances.

The County held a step two grievance meeting on October 1, 2007. After this meeting, Kuehn provided additional documents from his doctor, which were

---

[9] Id. at 134 (emphasis omitted).

dated October 1, 2007. By letter dated November 2, 2007, the County denied

Kuehn's step two grievances. It found that Kuehn, alone, was responsible to see

that requests for information were returned in a timely manner, and it found that

Kuehn ignored every deadline. The County also found that the paperwork it

received from Kuehn's doctor did "not provide any new information that bears on

the merits of the grievances."[10] The letter stated:

> Nothing in the information belatedly provided by [Kuehn's doctor]
> suggests that either instance of tardiness was caused by [Kuehn's]
> medical condition. To the contrary, I understand the information to
> state that [Kuehn's] medical condition is well-regulated by effective
> treatment and that [he] [is] not operating under any medical
> restrictions. This is consistent with the limited information [Kuehn]
> provided during the initial pre-disciplinary hearings and follow-up
> communications with respect to the June 13 and June 27 instances
> of tardiness. At no time did [Kuehn] state that [his] tardiness was
> caused by [his] medical condition despite numerous opportunities
> to do so. Based upon all of the information before me, I find that
> there is no connection.[11]

The County held a step three grievance hearing on November 6, 2007. It

denied the grievances and upheld Kuehn's termination.

Kuehn commenced this action more than three years after August 2,

2007, the date on which he received the two letters. He alleged that the County

violated Washington's Law Against Discrimination (WLAD) and Washington's

Family Leave Act by failing to reasonably accommodate his disabilities and by

wrongfully terminating him for conduct resulting from his disabilities. Neither side

disputes that Kuehn's complaint was filed on October 13, 2010.

---

[10] Id. at 213.

[11] Id.

The County moved for summary judgment, arguing that the statute of limitation on these claims had run before filing. The trial court granted this motion.

Kuehn appeals.

## STATUTE OF LIMITATIONS

Kuehn argues that the trial court erred by dismissing his claims against the County based on the statute of limitations. We disagree.

Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[12] The court must consider all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party.[13] This court reviews de novo the grant or denial of summary judgment.[14]

The statute of limitations for actions involving discrimination under RCW 49.60.180 is three years.[15]

*Wrongful Termination*

Kuehn argues that the trial court erred when it dismissed his wrongful termination claim based on the statute of limitations. Because he filed this action more than three years after the claim accrued, we disagree.

---

[12] CR 56(c).

[13] Douchette, 117 Wn.2d at 809.

[14] Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 230, 119 P.3d 325 (2005).

[15] Douchette, 117 Wn.2d at 809.

In Douchette v. Bethel School District, our supreme court considered when a claim for wrongful discharge accrued.[16] In that case, Alberta Douchette collapsed on the job in January 1983 as a result of what she alleged were intolerable working conditions.[17] Douchette submitted a letter of resignation to the school board on February 16, 1983.[18] In her letter, she stated that her resignation was to be effective March 15, 1983.[19] Douchette intended to return to work but was unable to do so.[20] On March 17, 1986, Douchette brought claims of wrongful discharge, age discrimination in violation of both state and federal law, violation of her civil rights, and the tort of outrage.[21]

The District moved to dismiss Douchette's claims, arguing that because Douchette filed her action more than three years after termination of her employment, her claims were all time-barred.[22] The trial court found that there were material questions of fact as to the date on which the causes of action

---

[16] 117 Wn.2d 805, 815, 818 P.2d 1362 (1991).

[17] Id. at 807.

[18] Id.

[19] Id.

[20] Id.

[21] Id. at 808.

[22] Id.

accrued, and it denied the District's motion.[23] Division Two of this court granted discretionary review and reversed.[24] The supreme court affirmed Division Two.[25]

The supreme court rejected Douchette's argument that her wrongful discharge claim did not accrue until the effective date of her letter of resignation—March 15, 1983.[26] It cited and briefly discussed Delaware State College v. Ricks, a United States Supreme Court case.[27] It stated that in Ricks, "[T]he Supreme Court held that claims for employment discrimination accrue when notice of termination is communicated to the employee."[28] And it quoted the Supreme Court's reasoning, that "'[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'"[29] Additionally, it cited another United States Supreme Court Case, Chardon v. Fernandez, which held that the applicable statute of limitation began running on the date respondents received letters notifying them their employment would terminate at some future date.[30]

_____

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 815.

[27] Id. at 816 (citing Del. State Coll. v. Ricks, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)).

[28] Id.

[29] Id. (quoting Ricks, 449 U.S. at 257).

[30] Id. (citing Chardon v. Fernandez, 454 U.S. 6, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981)).

9

After citing these cases, the supreme court concluded that Douchette's claim accrued on February 15, 1983.[31] Notably, in a footnote, the supreme court stated, "We find persuasive the Supreme Court's ruling that the discharge of an employee is effective the date the employer communicates notice of termination (or intent to terminate at a specific date), to the employee."[32]

In this case, the trial court properly relied on <u>Douchette</u> when it concluded that the termination became actionable on August 2, 2007. Kuehn admits in his declaration that he received two letters "shortly before the end of [his] shift on August 2, 2007," and he further admits that the second letter informed him that he "would be terminated on August 16, 2007."[33] Under <u>Douchette</u>, Kuehn's discharge was effective on August 2, 2007, which was when the County communicated its notice of intent to terminate Kuehn at a specific date.

In sum, Kuehn's wrongful termination claim accrued on August 2, 2007 and expired on August 2, 2010. Because he did not commence this action within the applicable three-year period, his claim for wrongful discharge is barred.

Kuehn argues that the limitations period for wrongful discharge cases does not always commence on the date the employer communicates its intent to terminate the employee. He argues that the <u>Douchette</u> court specifically declined to rule on the issue, and he quotes the following language from that opinion:

---

[31] <u>Id.</u>

[32] <u>Id.</u> at 816 n.9.

[33] Clerk's Papers at 217.

10

> We note that in a claim for constructive discharge, the date may be the date the employee gives notice to the employer or the last day of actual employment. Because we do not decide the issue of whether an employee has a common law claim for constructive discharge . . . in addition to the statutory remedy, we do not decide the date on which such a claim accrues. Our holding today is limited to the facts of the case.[34]

The plain language of this passage shows that the supreme court did not reach the question when a cause of action for constructive discharge accrues. This is not such an action. Thus, this passage is inapposite to the question before us.

Kuehn argues that the statute of limitations began to run, at the earliest, on August 16, 2007 because that was the effective date of his termination. But this argument directly conflicts with Douchette and the United States Supreme Court cases it cited. Under those case, mere continuity of employment does not prolong the life of an employment discrimination claim.[35]

Kuehn argues that "discriminatory acts continuing until or occurring at the time of actual termination extend commencement of the limitations period on wrongful discharge claims to the actual date of termination."[36] But Kuehn does not explain what discriminatory acts continued until or occurred at the time of actual termination. And he cites no relevant authority to support this argument. We reject it.

---

[34] Douchette, 117 Wn.2d at 816 n.9.

[35] Id. at 816; Ricks, 449 U.S. at 257.

[36] Appellant's Reply Brief at 2.

*Accommodation Claim*

Kuehn argues that the trial court erred when it dismissed his accommodation claim based on the statute of limitations. We again disagree.

A cause of action for disability discrimination accrues when the employer makes a decision not to accommodate the employee's disability and communicates that decision to the employee.[37] "At that time, the facts to support a discrimination claim become apparent to a reasonably prudent person."[38]

Here, the parties agree that the cause of action accrues when the decision not to accommodate the disability is communicated to the employee. But the parties disagree about when that occurred in this case.

The County argues that it communicated its decision not to accommodate Kuehn's disability on August 2, 2007, when Kuehn received two disciplinary hearing results letters informing him that his fifth and sixth instances of tardiness would not be excused. Kuehn, on the other hand, argues that the County communicated the decision not to accommodate his disability on November 2, 2007. This latter date is when the County denied his grievances and stated that the new medical information from his doctor did not show a connection between his tardiness and his medical condition.

We conclude that the County is correct. The County clearly communicated its decision not to accommodate Kuehn's disability on August 2,

---

[37] Hintz, 92 Wn. App. at 16; Hinman, 69 Wn. App. at 449; Albright, 65 Wn. App. at 767.

[38] Hinman, 69 Wn. App. at 450.

2007. That is when it informed Kuehn that it was disciplining him for his two June 2007 instances of tardiness. The discipline letters each state that Kuehn had been found to have violated the tardiness policy, that discipline was being imposed, and that there were no mitigating factors to consider in imposing discipline.

Prior to this date, Kuehn was aware of his accommodation plan, under which the County would excuse instances of tardiness caused by his medical condition but would not excuse instances of tardiness unrelated to his medical condition. The County's imposition of discipline on August 2, 2007 indicated its decision not to accommodate Kuehn's disability for these instances of tardiness. At that time, the facts to support a discrimination claim become apparent to a reasonably prudent person. That is when a cause of action accrues under the cases we previously cited in this opinion.

Kuehn disagrees that the County communicated its denial of Kuehn's accommodation on August 2, 2007. He argues that the County did not reference or acknowledge his accommodation request in its August 2, 2007 letters and that the letters were "silent" about accommodation. But due to Kuehn's knowledge of how his accommodation plan worked, this argument is unpersuasive.

Kuehn asserts that the County told him it would not make a decision about discipline until it received his medical information. But the County provided a specific deadline for submitting additional medical information, and Kuehn failed to comply with it. Moreover, the August 2, 2007 letters unambiguously indicate that the County made a decision about discipline.

13

Kuehn argues that at a minimum, a genuine issue of material fact exists regarding when the County communicated its denial. He relies on Hintz v. Kitsap County.[39] In that case, Kitsap County terminated Paul Hintz on September 3, 1992 after Hintz was injured and efforts to reassign him to other tasks failed.[40] Hintz subsequently filed a letter of complaint with the Kitsap County Risk Management Office, which referred the letter to the prosecutor's office.[41] In a letter dated September 1, 1993, a deputy prosecuting attorney informed Hintz that the laws requiring employers to accommodate employees with disabilities did not apply to him.[42] On appeal, Hintz claimed that there was a genuine issue of material fact as to the running of the three-year limitations period for his disability discrimination claim.[43] He relied on the prosecutor's letter to argue that the cause of action accrued on September 1, 1993.[44] Division Two stated that the prosecutor's letter met "the conditions for accrual" and that Hintz's cause of action accrued, at the latest, on September 1, 1993.[45]

---

[39] Appellant's Reply Brief at 7-8 (citing Hintz, 92 Wn. App. at 10).

[40] Hintz, 92 Wn. App. at 11.

[41] Id.

[42] Id.

[43] Id. at 16.

[44] Id.

[45] Id.

Kuehn compares this case to <u>Hintz</u> and argues, "Like the prosecutor's September 1, 1993 letter to Hintz, the County's November 2, 2007 memo to Mr. Kuehn in the present case was the latest communication from the County . . . informing [Kuehn] of the County's position that there was no connection between his disability and his absenteeism, and that the County was standing by its decision to terminate his employment."[46]

But <u>Hintz</u> did not expressly hold that there was a genuine issue of material fact as to the date of accrual. Nor did it hold that the "latest communication" was relevant to determining the date of accrual. Moreover, <u>Hintz</u> is distinguishable from this case. There are no facts in <u>Hintz</u> indicating that Kitsap County clearly communicated the denial of the accommodation prior to the letter from the prosecutor. Here, in contrast, the County clearly communicated its denial of Kuehn's accommodation request on August 2, 2007. For these reasons, Kuehn's reliance on <u>Hintz</u> is not persuasive.

In sum, we reject Kuehn's argument that he did not know all the facts necessary to discover his accommodation claim as of August 2, 2007. The later interactions between the parties do not diminish the fact that he knew on this date all that he needed to know for purposes of accrual of this claim.

Kuehn next makes several arguments that the County had an ongoing duty to accommodate him.

---

[46] Appellant's Reply Brief at 8.

Kuehn argues that the trial court erred by not recognizing the significance of the County's admission that it continued to interact with him after it sent him the termination notice, and he asserts, "During this 'interactive' process, the [County's] duty to accommodate [Kuehn] continued."[47] He also relies on Humphrey v. Memorial Hospitals Ass'n to argue that employers must engage in the interactive process in good faith.[48] In Humphrey, the employee was terminated after an initial accommodation attempt failed, and the Ninth Circuit held that "the duty to accommodate 'is a continuing duty that is not exhausted by one effort.'"[49]

But Kuehn's discussion of the "interactive process" and his reliance on Humphrey are misplaced. Kuehn's claim is not that the initial accommodation attempt failed, and he does not appear to dispute the effectiveness of the established accommodation plan. Rather, Kuehn appears to dispute whether the two June instances of tardiness should be excused under that plan. Kuehn does not argue that the County should have explored further methods of accommodation, and Kuehn did not ask for different accommodation. Further, Kuehn was discharged for disciplinary reasons.

Moreover, the relevant question here is not when the duty to accommodate ends but rather, when the statute of limitation accrues. Kuehn

---

[47] Appellant's Opening Brief at 17-18.

[48] 239 F.3d 1128 (9th Cir. 2001).

[49] Id. at 1138 (internal quotation marks omitted) (quoting McAlindin v. County of San Diego, 192 F.3d 1226, 1237 (9th Cir. 1999)).

fails to explain how the issues of whether the County had an ongoing duty to accommodate, or whether it violated this duty, are relevant to this inquiry.

In a similar argument, Kuehn contends that the duty to accommodate may continue even after termination. To support this proposition, he primarily relies on Phillips v. City of Seattle[50] and Wheeler v. Catholic Archdiocese of Seattle.[51]

In Phillips, the city terminated Bryce Phillips's employment for excessive absenteeism caused by his alcoholism.[52] After Phillips was discharged, he entered a treatment program and requested that the city hold his position open pending completion of the program.[53] The city refused, and Phillips sued the city for failing to reasonably accommodate his disability.[54] The supreme court stated, "It is a jury question whether the employer's actions constituted a reasonable accommodation or whether the employee's requests would have placed an undue burden on the employer."[55]

In Wheeler, this court examined Phillips and concluded:

[T]he period of time [that] the duty of accommodation continues after termination should not be imposed as a matter of law. Certainly, there is no statutory or regulatory authority indicating that the duty terminates upon termination of the employment

---

[50] 111 Wn.2d 903, 766 P.2d 1099 (1989).

[51] 65 Wn. App. 552, 829 P.2d 196 (1992), rev'd on other grounds, 124 Wn.2d 634 (1994).

[52] Phillips, 111 Wn.2d at 905.

[53] Id.

[54] Id.

[55] Id. at 911.

relationship or at any particular time thereafter. Rather, it is for the trier of fact to decide at what point continued attempts to accommodate become an undue burden as opposed to a reasonable requirement.[56]

Overall, these cases support Kuehn's assertion that the duty to accommodate can continue after termination. But neither case, however, addresses the question before us—accrual of this cause of action. Thus, they are inapposite.

Kuehn compares this case to Martini v. Boeing,[57] arguing, "Like Martini, the facts of this case demonstrate that [the] County's duty to accommodate Mr. Kuehn continued after the date of the termination notice."[58] But for reasons just discussed, this argument is not helpful. He also relies on Martini to argue that a wronged employee may recover damages for discrimination that begins during the period barred by the statute of limitations but continues into the three-year limitations period. But the question of damages is not at issue here. In short, Martini does not assist Kuehn in any way.

In sum, Kuehn's arguments about the duty to accommodate fail to address the central point—accrual of the discrimination claim was on August 2, 2007, not some time later. Accordingly, these arguments are not helpful.

Finally, Kuehn argues that the trial court "mistakenly focused on the termination as one actionable claim against [the] County, instead of the ongoing

---

[56] Wheeler, 65 Wn. App. at 563.

[57] 88 Wn. App. 442, 945 P.2d 248 (1997).

[58] Appellant's Opening Brief at 24.

18

discriminatory conduct of the County."[59] And he argues that a lawsuit is timely filed as long as some act of discrimination occurred within the limitations period.[60] He relies primarily on Goodman v. Boeing[61] and Antonius v. King County.[62]

In Goodman, this court held that, under the continuing violation doctrine, an employee could recover damages for discrimination that began during the period barred by the statute of limitations but that continued into the three-year limitations period.[63]

In Antonius, our supreme court adopted the Supreme Court's analysis in National Railroad Passenger Corp. v. Morgan to determine whether an employer is liable for hostile work environment conduct that occurred more than three years before the plaintiff filed suit.[64] In Morgan, the Supreme Court concluded that hostile work environment claims, by their very nature, involve repeated conduct, and thus, the unlawful employment practice cannot be said to occur on any particular day. Accordingly, as our supreme court explained, "As a unitary whole, the claim is not untimely if one of the acts occurs during the limitations

---

[59] Id.

[60] Id. at 25.

[61] 75 Wn. App. 60, 877 P.2d 703 (1994).

[62] 153 Wn.2d 256, 103 P.3d 729 (2004).

[63] Goodman, 75 Wn. App. at 76-78.

[64] 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

period because the claim is brought after the practice, as a whole, occurred and within the limitations period."[65]

Kuehn asserts that the County's "discriminatory refusal to accommodate [him] continued through November 2, 2007."[66] Thus, he argues that the pre-suit notice and his lawsuit were timely filed because the statute did not begin to run until the final act occurred.

But "'[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.'"[67] And the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful."[68] The County's review of its decision in the grievance process did not constitute a new act of discrimination that extended the accrual date. Kuehn's claims are based on discrete acts, not repeated conduct.

As the supreme court explained in Antonius, "discrete retaliatory or discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire" are distinguishable from claims of a hostile work environment.[69]

---

[65] Antonius, 153 Wn.2d at 266.

[66] Appellant's Opening Brief at 28.

[67] Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 552 (7th Cir. 1996) (quoting Lever v. Nw. Univ., 979 F.2d 552, 556 (7th Cir. 1992)).

[68] Albright, 65 Wn. App. at 767 (emphasis omitted) (quoting Chardon, 454 U.S. at 8).

[69] Antonius, 153 Wn.2d at 264.

And for discrete acts, the limitations period runs from the act itself.[70] In short, we reject Kuehn's arguments that his suit was timely filed.

We affirm the summary judgment order.

_Cox, J._

WE CONCUR:

_Spearman, C.J._          _Dwyer, J._

---

[70] Id.